**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:                                                          Case No. 6:24-bk-06734-GER

DEALER SALES SOLUTIONS LLC,                    Chapter 11
                                                               Subchapter V
         Debtor.                                          EIN:  45-3304358

_____/

                                                          **EMERGENCY HEARING REQUESTED**


**MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
**AND REQUEST FOR EMERGENCY RELIEF**

         Debtor-in-possession, DEALER SALES SOLUTIONS LLC ("Debtor"), by and through
undersigned proposed counsel, moves for the entry of an order authorizing the use of cash
collateral and to provide adequate protection to the U.S. SMALL BUSINESS
ADMINISTRATION ("SBA" or "Senior Creditor"); and, to the extent necessary, to the
following inferior interests that may assert a lien on or security interest in the Debtor's cash
collateral: FASANARA SECURITISATION S.A., acting on behalf of its Compartment L, as
assignee of SELLERSFUNDING CORP. (collectively, the "Inferior Interests"). Debtor
respectfully requests an emergency preliminary hearing.  In support of this Motion, Debtor states
as follows:

                                        **Introduction**

         1.         Debtor requests emergency authorization to use cash collateral retroactive to the
petition date and for the duration of this case for purposes of funding ordinary course operations
and expenses in accordance with the budget attached hereto as **Exhibit A** ("Budget").  As
adequate protection for the use of cash collateral, Debtor proposes providing the Senior Creditor
and Inferior Interests with replacement liens having the same validity, priority, extent, and value

                                                1

as their respective prepetition lien(s) (if any).  Debtor is filing a separate certificate of emergency in conjunction with this motion because it will suffer immediate and irreparable harm if it is not permitted to use cash collateral to fund ordinary expenses.

## Jurisdiction and Venue

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. §157.

3.     Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.     The statutory bases for the relief requested herein are §§ 105, 361, 363, and 541 of the Bankruptcy Code; Rules 2002, 4001, 6003, 7004, 9014, and 9034 of the Federal Rules of Bankruptcy Procedure; and Local Rules 2081-1(g)(1) and 9013-1(d) of the United States Bankruptcy Court for the Middle District of Florida.

## Background

5.     On December 11, 2024 ("Petition Date"), Debtor filed a voluntary petition (Doc. 1, "Petition") for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101, *et seq.*, the "Bankruptcy Code").  The Debtor continues to operate its business and manages its property as a debtor-in-possession pursuant to Sections 1184 of the Bankruptcy Code.

6.     The Debtor is a Florida limited liability company created by Articles of Organization filed with the Florida Secretary of State on or around September 16, 2011.  As reflected on the Debtor's website, https://www.dealersalessolutions.com/, the Debtor supplies Factory OE Auto Parts for most vehicle manufacturers, provides expert services to help identify the correct part, and offers fast shipping and delivery for its customers.

**Events Leading to Chapter 11 Filing**

7.      The Debtor has a well-established business supplying OE (Original Equipment) automobile parts to customers who purchase parts on Amazon, eBay, and Walmart marketplaces, but the Debtor has suffered financial difficulties due to a series strategic miscalculations and unforeseen circumstances.  The strategic miscalculation was the decision to expand beyond the Debtor's marketplace niche into wholesale auto part sales.  Significant startup costs were incurred to add wholesale to the Debtor's service offering with the plan of increasing sales and profits.  The Debtor leveraged its time and money to expand into wholesale, but the Debtor did not foresee that there were inadequate systems and processes to support and maintain the wholesale business, which contributed to a data entry error that led to an unintentional mispricing of inventory for a period of time, resulting in a profit shortfall.  In addition, the Debtor did not foresee that the expansion into wholesale would involve other challenges, including significant competition to contend with; a UAW autoworkers strike that significantly impacted the supply chain; two hurricanes that had a significant impact on Debtor's operations and its parts suppliers; complications developing needed software integrations; interruptions moving the operation to central location; and the Debtor's inability to launch aftermarket automobile parts.  The Debtor desires to use the relief provided by Chapter 11, Subchapter V, to restructure and refocus its operations to ensure profitability going forward.  The Debtor commenced this Chapter 11 Case in order to implement a comprehensive restructuring, stabilize its operations for the benefit of its secured creditors, landlord, unsecured creditors, customers, and other constituencies; and to propose a mechanism to efficiently address and resolve all claims.  The filing of this Chapter 11 Case is not the end result of any strategy or attempt to avoid any lawful responsibilities or obligations.  Rather, the Debtor commenced this Chapter 11

Case after a comprehensive review of all realistic alternatives and the consideration and balancing of a variety of factors.

## Cash Collateral

8.      As used herein, "cash collateral" is defined as set forth in § 363(a) of the Bankruptcy Code and includes, without limitation, cash on hand, accounts receivable, and funds held by others.

9.      As of the Petition Date, the Debtor's cash collateral is as follows:  the Debtor has approximately $7,243.42 in a deposit account with First Horizon Bank; and the Debtor has approximately $58,482.12 in a separate deposit account with First Horizon Bank.  In addition, there is approximately $121,000.00 being held by Amazon.com, Inc., which it has refused to release to the Debtor based on a letter it received from Sellersfunding International Portfolio Ltd. The Debtor is also owed a total of approximately $1,039.23 in accounts receivable.

10.      Debtor disputes that the Senior Creditor or the Inferior Interests have a lien on the Debtor's deposit accounts or the funds being held by Amazon.com, Inc. for the reasons explained below.  Nevertheless, Debtor respectfully requests authority to use all funds that might arguably be considered cash collateral to pay the normal operating expenses and costs associated with running its business and administering this Chapter 11 case.

## Creditors that Might Assert Liens on Cash Collateral

11.      The Debtor owes approximately $145,251.00 to the SBA, which filed a UCC Financing Statement (Filing No. 202002174952) on June 10, 2020, describing its collateral as "[a]ll tangible and intangible personal property . . . ."  Debtor disputes that the SBA or the Inferior Interests have control of the Debtor's deposit account or the funds being held by Amazon in the manner required by sections 679.3121 and 679.3141 of the Florida Statutes to

4

perfect a lien on same.  As such, this claim does not encumber the Debtor's deposit accounts or the funds being held by Amazon, and Debtor reserves all rights, claims, defenses, and remedies with respect thereto.  Nevertheless, to the extent that it may be argued or found that Senior Creditor has a lien on the Debtor's cash collateral or any funds the Debtor is entitled to receive or may receive, Debtor respectfully requests authorization to use the same.

12.     In addition, the Debtor owes approximately $338,000.00 to Sellersfunding Corp, which filed a UCC Financing Statement (Filing No. 202401326497) on May 17, 2024, describing its collateral as "[a]ll present and future receivables owed from the Marketplace . . ." and also filed a UCC assignment (Filing No. 20241331016), adding Fasanara Securitisation S.A., acting for and on behalf of its Compartment L as a secured party.[1]  Debtor disputes that the Inferior Interests have control of the Debtor's deposit account or the funds being held by Amazon in the manner required by sections 679.3121 and 679.3141 of the Florida Statutes to perfect a lien on same.  Nevertheless, to the extent that it may be argued or found that the Inferior Interests have a lien on the Debtor's cash collateral or any funds the Debtor is entitled to receive or may receive in the future, Debtor respectfully requests authorization to use the same in accordance with § 363 of the Bankruptcy Code.

13.     In its effort to successfully reorganize its business, it is essential that the Debtor continue to operate, which will require the use of funds on hand and funds to be received. Debtor requires immediate access to liquidity to ensure the preservation of business operations and the value of the bankruptcy estate during this Chapter 11 case.  Without prompt access to its

---

[1]     Additionally, on June 10, 2024, Sellersfunding Corp also filed a UCC Financing Statement (Filing No. 202401537064) describing its collateral as "[a]ll present and future receivables owed from the Marketplace . . ." and also filed a UCC assignment (Filing No. 202401541428), adding Fasanara Securitisation S.A., acting for and on behalf of its Compartment L as a secured party; and on July 10, 2024, Sellersfunding Corp also filed a UCC Financing Statement (Filing No. 202401829006) describing its collateral as "[a]ll present and future receivables owed from the Marketplace . . ." and also filed a UCC assignment (Filing No. 202401822516), adding Fasanara Securitisation S.A., acting for and on behalf of its Compartment L as a secured party.

cash collateral, the Debtor will be unable to pay normal operating expenses or otherwise fund the administration of the bankruptcy estate.   Such an outcome would cause immediate and irreparable harm.

14.     During this Chapter 11 case, Debtor will need the cash generated from its operations to satisfy payroll obligations, to obtain supplies, to pay suppliers and vendors, to maintain insurance coverage, to pay taxes, and to make other payments essential to the continued management, operation, and preservation of the Debtor's business.   The ability to pay these expenses as they come due is essential to the continuity of business operations and ensuring the preservation of the bankruptcy estate's value during this Chapter 11 case.

15.     Debtor has developed the Budget (**Exhibit A**) for the use of cash collateral, which Debtor believes provides sufficient liquidity during the interim period.   The Budget contains line items for cash flows anticipated to be received and dispersed during the period for which the Budget is prepared.

16.     Except as specifically authorized by law or court order, Debtor will not use the cash collateral to pay prepetition obligations.

17.     Without conceding that the Senior Creditor or Inferior Interests have a lien on the Debtor's cash collateral, as adequate protection for the use of cash collateral, Debtor proposes to grant creditors a replacement lien with the same validity, extent, priority, and value as their respective prepetition liens (if any).   Debtor disputes that Senior Creditor or any of the Inferior Interests ever had control of the Debtor's deposit accounts or the funds being held by Amazon in the manner required by sections 679.3121 and 679.3141 of the Florida Statutes to perfect a lien on same, and therefore these funds are not encumbered by their liens.

**<u>Legal Argument and Basis for Relief</u>**

18.     Section 363(c)(1) of the Bankruptcy Code permits the use of property of the bankruptcy estate in Subchapter V cases:  "If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1) (emphasis added).

19.     In this case, Debtor is operating its business and has the powers of a trustee pursuant to § 1184 of the Bankruptcy Code.

20.     With respect to the use of cash collateral, § 363(c)(2) of the Bankruptcy Code requires either that "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2); *see also In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010) (explaining that "[t]he Bankruptcy Code prohibits the post-petition use of cash collateral by a trustee or a debtor- in-possession, unless the secured party or the bankruptcy court after notice and a hearing authorizes the use of cash collateral upon a finding that the secured party's interest in the cash is adequately protected").

21.     "Section 363(c)(2) balances competing interests in a Chapter 11 reorganization . . . .  [A] debtor reorganizing his business has a compelling need to use cash collateral in order to meet its daily operating expenses and rehabilitate its business." *Delco Oil*, 599 F.3d at 1258; *see also In re George Ruggiere Chrysler-Plymouth, Inc*., 727 F.2d 1017, 1019 (11th Cir. 1984) (explaining that "[a] debtor, attempting to reorganize a business under Chapter

7

11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated").  Here, the Debtor requires the use of cash collateral to ensure the continuation of the business, which is essential to its overall reorganization efforts.

22.     Section 363(e) of the Bankruptcy Code provides for "adequate protection" of secured interests in property when a debtor uses cash collateral.  *See* 11 U.S.C. § 363(e); *see also* 11 U.S.C. § 361.  Likewise,  §362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See* 11 U.S.C. § 362(d)(1). While § 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, bankruptcy courts ultimately decide what constitutes sufficient adequate protection on a case-by-case basis.  *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *see also Martin v. U.S. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985).  For example, in *O'Connor*, the court held that "[i]n order to encourage the debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *O'Connor*, 808 F.2d at 1396 (citations omitted); *see also In re Quality Interiors, Inc.*, 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holding that a replacement lien provided adequate protection).

23.     Adequate protection is meant to ensure only that the secured creditor receives the value for which it originally bargained prior to bankruptcy.  *The Resolution Trust Corp. v. Swede/and Dev. Group, Inc. (In re Swede/and Dev. Group., Inc.)*, 16 F.3d 552, 564 (3rd Cir. 1994) (citing *Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)); *see also* 11 U.S.C. § 361.  The essence of adequate protection is the assurance of the

maintenance and continued responsibility of the lien value in the interim between the filing of the petition and confirmation. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). Importantly, adequate protection is only intended to protect secured creditors from the diminution of value of the collateral during the interim use period. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *see also In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

24.     As adequate protection of their respective secured interests (if any), Debtor proposes to provide the Senior Creditor and Inferior Interests with replacement liens having the same validity, priority, extent, and value as their respective prepetitions liens, which Debtor submits is sufficient to provide adequate protection to the Senior Creditor and Inferior Interests from any diminution in value of the collateral during the interim period. *See, e.g.*, *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

25.     If the Debtor is not permitted to use the cash collateral, it will likely be unable to pay ordinary course expenses, such as payroll obligations, obtain supplies and inventory, maintain insurance coverage, pay taxes, and make any other payments essential to the continued management, operation, and preservation of the business. A halt of operations would result in the loss of the going concern value of the business and a reduction in the value of the estate's assets, resulting in immediate and irreparable harm. The inability to fund operations will

significantly if not completely diminish the chances for a successful reorganization.  It is in the best interest of the Debtor, the estate, and all creditors to preserve the value of the business and estate.

26.     The Debtor believes that the granting of this Motion is in the best interest of the Debtor, creditors, and the estate because it will enable the Debtor to: (a) continue the orderly operation of the business and avoid an immediate shutdown of operations; (b) meet  obligations for necessary ordinary course expenditures and other operating expenses; and (c) make payments authorized under other orders entered by this Court, thereby avoiding immediate and irreparable harm to the Debtor and the estate.

27.     Considering the foregoing, the Debtor submits that the proposed adequate protection to be provided for the benefit of the Senior Creditor is appropriate. The Debtor's proposed replacement liens adequately protect the Senior Creditor (and, to the extent necessary, the Inferior Interests) against any diminution in value and is also fair and appropriate on an interim basis under the circumstances of this Bankruptcy Case to ensure that the Debtor is able to continue using the cash collateral in the near term for the benefit of all parties in interest and its estate.

28.     There is insufficient time for a full and final hearing pursuant to Bankruptcy Rule 4001(b)(2) to be held before the Debtor must use cash collateral.  If this Motion is not considered on an emergency basis and the Debtor is denied the ability to immediately use cash collateral, there will be direct, immediate, material, adverse impacts on the continuing operations of the business and the overall value of the estate.

29.     In accordance with Bankruptcy Rule 4001(b)(1)(A), a proposed order is attached hereto as **Exhibit B**.

30.     In accordance with Local Rule 2081-1(g)(1), a budget showing estimated expenses for the Debtor for the next three (3) months (the "Budget") is attached hereto as **Exhibit A** and is incorporated herein by reference.

WHEREFORE, Debtor, DEALER SALES SOLUTIONS LLC, respectfully requests the entry of an order: (i) granting Debtor on a preliminary basis the right to use the cash collateral that is subject to Senior Creditor's lien, (ii) approving the adequate protection provided to the Senior Creditor and Inferior Interests being in the form of a replacement lien with the same validity, priority, extent, and value as the respective creditors had prepetition (if any), and (iii) granting such other and further relief as the Court may deem just and proper.

Respectfully submitted this 12th day of December, 2024,

<div style="margin-left:40%">

/s/ Jeffrey S. Ainsworth
JEFFREY S. AINSWORTH
Florida Bar No. 60769
JACOB D. FLENTKE
Flentke Legal Consulting, PLLC, Of Counsel
Florida Bar No. 25482
**BransonLaw, PLLC**
1501 E. Concord St.
Orlando, FL  32803
Phone:  407-894-6834
Fax:  407-894-8559
Primary E-mail:  jeff@bransonlaw.com
                 jacob@bransonlaw.com
                 jacob@flentkelegal.com
Secondary:       tammy@bransonlaw.com
                 lisa@bransonlaw.com
Attorneys for Debtor

</div>

**EXHIBIT A**:

**BUDGET**

## Ex. A - Cash Collateral

**Dealer Sale Solutions**

| GROSS RECEIPTS | Dec | Jan-25 | Feb-25 |
|---|---|---|---|
| Sales | $ 457,143 | $ 525,000 | $ 550,000 |
| Beginning Cash Balance | $ 65,726 | $ 68,672 | $ 72,807 |
| (Marketplace Fees) | $ (57,143) | $ (65,625) | $ (68,750) |
| **Gross Sales** | **$ 465,726** | **$ 528,047** | **$ 554,057** |
| **COST OF GOODS SOLD** | | | |
| purchases | $ 265,857 | $ 315,250 | $ 330,500 |
| Shipping | $ 54,857 | $ 63,000 | $ 66,000 |
| supplies | $ 5,029 | $ 5,029 | $ 5,775 |
| **Total Cost of Goods Sold** | **$ 325,743** | **$ 383,279** | **$ 402,275** |
| **Gross Profit** | **$ 139,983** | **$ 144,769** | **$ 151,782** |
| **EXPENSES** | | | |
| Payroll | $ 35,734 | $ 35,734 | $ 35,734 |
| Officer Comp | $ 16,963 | $ 16,963 | $ 16,963 |
| Payroll Taxes and Benefits | $ 5,328 | $ 5,328 | $ 5,328 |
| Customer Return Costs | $ 2,286 | $ 2,625 | $ 2,750 |
| Office Expense | $ 1,000 | $ 1,313 | $ 1,375 |
| Non Healthcare Ins | $ 2,000 | $ 2,000 | $ 2,000 |
| Utilities | $ 500 | $ 500 | $ 500 |
| Accounting Services | $ 750 | $ 750 | $ 750 |
| Other (supplies, office, etc) | $ 750 | $ 750 | $ 750 |
| Software Development | $ 1,000 | $ 1,000 | $ 1,000 |
| Sub V Trustee | $ 1,000 | $ 1,000 | $ 1,000 |
| Software Expense | $ 4,000 | $ 4,000 | $ 4,000 |
| **Total Operating Expenses** | **$ 71,310** | **$ 71,962** | **$ 72,150** |
| **Net Operating Income** | **$ 68,672** | **$ 72,807** | **$ 79,632** |
| | | | |
| Total Debt Service | $ - | $ - | $ - |
| ENDING CASH BALANCE (LOSS) | $ 68,672 | $ 72,807 | $ 79,632 |

**EXHIBIT B**:

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:

                                                Case No. 6:24-bk-06734-GER

DEALER SALES SOLUTIONS LLC,

                                                Chapter 11

        Debtor.                                 Subchapter V
_____/           EIN:  45-3304358

**PRELIMINARY ORDER GRANTING**
**MOTION BY DEBTOR-IN-POSSESSION FOR AUTHORITY TO USE CASH**
**COLLATERAL AND EMERGENCY HEARING REQUESTED**

THIS CASE came on for hearing on December ____, 2024, at _____, to consider the

*Motion for Authority to Use Cash Collateral and Emergency Hearing Requested* (Doc. ____,

"Motion") filed by Debtor, DEALER SALES SOLUTIONS LLC ("Debtor"), seeking

authorization to use cash collateral and to provide adequate protection to the U.S. SMALL

BUSINESS ADMINISTRATION ("SBA" or "Senior Creditor"); and, to the extent necessary,

the following inferior interests: FASANARA SECURITISATION S.A., acting on behalf of its

Compartment L, as assignee of SELLERSFUNDING CORP. (collectively, the "Inferior

Interests").  The Court, having reviewed the Motion, having found the Court has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and being otherwise fully advised in the

premises, finds that it is appropriate to grant the relief requested on and interim basis. Accordingly, it is

**ORDERED:**

1.      The Motion is **GRANTED** on an interim basis through and including _____.

2.      <u>Cash Collateral Authorization</u>. Subject to the provisions of this Order, the Debtor is authorized to use cash collateral to pay: (a) amounts expressly authorized by this Court, including payments to the United States Trustee for quarterly fees; (b) the current and necessary expenses set forth in the budget attached as Exhibit A[2] plus an amount not to exceed ten (10) percent for each line item; and (c) such additional amounts as may be expressly approved in writing by Creditor (which approval shall not be unreasonably withheld) within 48 hours of the Debtor's request. The Debtor shall be entitled to prompt court hearings on any disputed proposed expenditures.  This authorization will continue until _____.

3.      <u>Debtor Obligations</u>. Debtor shall timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the Orders of this Court.

4.      <u>Replacement Lien</u>. The Senior Creditor and Inferior Interests shall each have a perfected, postpetition lien against cash collateral with the same validity, priority, extent, and value as their respective pre-petition liens (if any), without the need to file or execute any documents as may otherwise be required under applicable nonbankruptcy law.

5.      <u>Insurance</u>.  The Debtor shall maintain insurance coverage for its property in accordance with the obligations under the loan and security documents with Secured Creditors.

---

[2] Expenses contained in Exhibit A that relate to the payments to professionals and the trustee require separate Court approval.

6.      <u>Without Prejudice</u>. This order is without prejudice to (i) any subsequent request by a party in interest for modified adequate protection or restrictions on use of cash collateral or (ii) any other right or remedy which may be available to the Debtor or Secured Creditors.

7.      <u>Creditors' Committee</u>. The provisions of this Order are without prejudice to the rights of the United States Trustee to appoint a committee or any rights of a duly-appointed committee to challenge the validity, priority, or extent of any lien(s) asserted against cash collateral.

8.      <u>Enforcement</u>. The Court shall retain jurisdiction to enforce the terms of this Order.

9.      A continued preliminary hearing on this matter will be held on _____, 2024, at _____, at which time continued use of cash collateral will be addressed.

<center># # #</center>

Attorney for Debtor, Jeffrey S. Ainsworth, is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

1

2

3

4

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

5

6

IN RE:

DEALER SALES SOLUTIONS LLC

CASE NO: 6:24-bk-06734-GER

**DECLARATION OF MAILING
CERTIFICATE OF SERVICE**

Chapter: 11

7

8

9

10

11

On 12/12/2024, I did cause a copy of the following documents, described below,

12

MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY RELIEF

13

14

15

16

17

18

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

19

20

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4).  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

21

22

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

23

DATED: 12/12/2024

24

/s/ Jeffrey S. Ainsworth
Jeffrey S. Ainsworth  060679
Attorney for Debtor
BransonLaw, PLLC
1501 E. Concord Street
Orlando, FL  32803
407 894 6834
tammy@bransonlaw.com

25

26

27

28

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

DEALER SALES SOLUTIONS LLC

CASE NO: 6:24-bk-06734-GER

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**

Chapter: 11

On 12/12/2024, a copy of the following documents, described below,

MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY RELIEF

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 12/12/2024

Miles Wood
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Jeffrey S. Ainsworth
BransonLaw, PLLC
1501 E. Concord Street
Orlando, FL  32803

USPS FIRST CLASS MAILING MATRIX
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

CM/ECF E-SERVICE

U.S. TRUSTEE +
400 W. WASHINGTON STREET, SUITE #1100
ORLANDO, FL 32801

DEALER SALES SOLUTIONS LLC
3241 EAGLE VIEW COVE
SANFORD, FL 32773

US SMALL BUSINESS ADMINISTRATION
409 3RD ST, SW
WASHINGTON DC 20416

U.S. SMALL BUSINESS ADMINISTRATION
DISASTER ASSISTANCE
PROCESSING AND DISBURSEMENT CENTER
14925 KINGSPORT ROAD
FORT WORTH, TX 76155

OFFICE OF THE U.S. ATTORNEY
CIVIL PROCESS CLERK
400 W. WASHINGTON STREET, SUITE 3100
ORLANDO, FL 32801

U.S. ATTORNEY GENERAL
U.S. DEPT. OF JUSTICE
950 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20530-0001

INTERNATIONAL

SELLERSFUNDING CORP
ATTN: PRESIDENT
1290 WESTON ROAD, SUITE 306
WESTON, FL 33326

SELLERSFUNDING CORP.
C/O VCORP AGENT SERVICES, INC.
(REGISTERED AGENT)
1200 S PINE ISLAND ROAD
PLANTATION, FL 33324

FASANARA SECURITISATION S.A,
ACTING FOR AND ON BEHALF OF ITS
COMPARTMENT L
ATTN: PRESIDENT
36-38 GRAND-RUE
GRAND DUCHY OF LUXEMBOURG, L-1660

CT CORPORATION, AS REPRESENTATIVE
330 N BRAND BLVD, SUITE 700
ATTN: SPRS AND PRESIDENT
GLENDALE, CA 91203